864 P.2d 179

Constance **MALMIN,** Plaintiff–Appellant,

v.

Richard D. **ENGLER** and Engler, Engler, Weil and Nelson, Defendants–Respondents.

No. 20329.

Court of Appeals of Idaho.

Oct. 28, 1993.

Petition for Review Denied Dec. 14, 1993.

Constance Malmin, pro se.

Coughlan & Coughlan, Boise, for respondents.

PERRY, Judge.

Constance Malmin (Malmin) appeals from a judgment entered by the district court in favor of the respondents, Richard D. Engler (Engler) and his law firm, in an action seeking damages for libel. For the reasons stated below, we affirm the judgment.

## STATEMENT OF FACTS AND PROCEEDINGS

In 1989, Idaho attorney Constance Malmin was retained to represent a divorced mother in a modification proceeding seeking increased child support payments from the child's father, who resided in Arizona. An action was filed in the magistrate division of the district court in Idaho, and the father retained Richard D. Engler, an Arizona attorney, to represent him in negotiations concerning the modification proceeding. An order directing the father to show cause why the child support should not be increased was requested by Malmin and set for hearing on September 20, 1989, before the magistrate.

Prior to the date for the show cause hearing, attorneys Malmin and Engler engaged in negotiations designed to resolve the matter without the necessity of further litigation or an appearance by the father with counsel in Idaho. During the week of September 11, 1989, an alleged agreement was reached between the parties increasing the child support payments to $200 per month. Malmin stated that she wished to present the agreement to the court on September 20, and she prepared and faxed a stipulation to Engler so that the father could execute it. The stipulation was faxed sometime after 5:00 p.m. on Friday, September 15, 1989. There apparently was no further contact between Malmin and Engler concerning the September 20 show cause hearing. Engler, however, was unable to procure the signature of his client until September 25, and faxed the agreement to Malmin's office on September 26. Shortly thereafter, Engler received by mail a copy of an order obtained from the magistrate by Malmin on September 20, which increased the child support award to $250 per month rather than the $200 as stipulated to by the parties.

Attorney Engler then wrote an ex parte letter to the magistrate handling the matter, complaining that the modification order, which was taken by a default against the father, was procured by a fraud on the court. Engler further requested that the magistrate inquire into the propriety of its order. He also included a copy of a complaint filed with the Idaho State Bar setting forth his view of the course of his negotiations with Malmin and his concerns about Malmin's conduct.

Malmin sued Engler and Engler's law partnership for libel. The district court granted Engler's motion for summary judgment, stating in its oral decision that the letters written to the magistrate were part of a "judicial proceeding" and as such were absolutely privileged. Malmin filed a "Plaintiff's Counter Summary Judgment Motion" in which she requested the district court to find Engler's statements and letters to be slanderous per se and not privileged.

In this appeal, Malmin asserts a number of reasons why summary judgment was improperly granted to Engler. The dispositive issue is her claim that because a default had been entered on September 20, 1989, the judicial proceeding had concluded. Accordingly, Malmin argues, the absolute privilege for communications made by attorneys in the institution of, during, in anticipation of, or as part of a legal proceeding is inapplicable.

## I.

At the outset, we note that summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). On appeal, we exercise free review in determining whether a genuine issue of material fact exists. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). As to other questions of

law, we also exercise free review. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992).

In granting the summary judgment, the district court based its ruling on the determination that the letters written to the magistrate were still in the course of a "judicial proceeding." The district court relied heavily on the fact that this was a child support proceeding, which remains subject to modification and reopening until the child reaches the age of eighteen. In addition, though Engler did not request that the modification order be set aside, he did request the magistrate to inquire further into the basis of its issuance.

▆▆ It is clear in Idaho that if Engler's letters to the magistrate were in the course of a judicial proceeding, they would be absolutely privileged. As best stated by the Idaho Supreme Court in the leading case in this area:

> The question therefore presented is whether or not the defamatory matter alleged is privileged.
>
> Expressing objections and requesting action in the form of a letter to a District Judge, and serving copies of the same on other counsel is a customary practice well recognized and often followed. The letter was written with reference and relation to the subject matter of the cause being litigated; and was, in effect, an objection or counter-showing to the subject matter of the brief. Hence the publication complained of was in the course of, connected with, and related to the judicial proceeding.
>
> The term judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power, 53 C.J.S., Libel and Slander, § 104, page 169, and to be privileged it is not absolutely essential that the language be spoken in open court or contained in a pleading, brief or affidavit.
>
> With certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will

not support a civil action for defamation although made maliciously and with knowledge of its falsity. ...

> The reason for the rule is one of public policy in which the law recognizes certain communications as privileged and cannot be used as the basis of actionable libel.
>
> If litigants and attorneys were not privileged in their allegations in judicial proceedings, or if they were to be subjected to prosecution for libel under such circumstances as are here presented, justice would often be defeated.

*Richeson v. Kessler*, 73 Idaho 548, 551–52, 255 P.2d 707, 709 (1953) (citations omitted). *See also* RESTATEMENT (SECOND) OF TORTS § 586 (1977).

This rule presents us with two questions, only the first of which we need address here: did the communications arise "in the due course of a judicial proceeding"? The second question, whether the communications were "reasonably related to that judicial proceeding," was not raised by Malmin. However, it is clear from the record and obvious to this Court that the communications were reasonably related to that judicial proceeding.

▆▆ Malmin first argues that because a default judgment was taken on September 20, 1989, the matter was closed and any communication after that date could not be part of a judicial proceeding. For a number of reasons, we decline to accept so narrow a view of judicial proceedings when determining whether an attorney's communications with a court are privileged. First, this is a case involving child support. Decrees and orders affecting custody and support of children are subject to the continuing control of the court and are thus always "pending." I.C. § 32–709; *Application of Martin*, 76 Idaho 179, 183, 279 P.2d 873, 875 (1955).

Second, following a default judgment, a party is entitled to move to set aside such judgment under I.R.C.P. 60(b) or to appeal the judgment. Even a technical definition of "judicial proceeding," as Malmin seems to propose, would still include post-judg-

ment options of a party, and such proceeding could not be concluded until those options have expired. Here, Engler's communication to the magistrate was within the time-frames applicable to these options. Malmin asserts that because Engler did not move to set aside the judgment and never intended to, we must declare, in retrospect, that the proceeding was terminated upon the default. We do not accept this invitation. The fact that Engler could have moved to set aside the judgment in this particular case was sufficient to keep the proceeding open for purposes of communicating with the judge concerning an alleged fraud upon the court. Moreover, the letter of which Malmin complains presented a request that the court "inquire into this matter of its own motion."

In her reply brief, Malmin clings to the district court's language that "technically the proceeding had terminated upon default and default judgment ... on a case that had been decided on a default basis some two weeks earlier." Malmin's reading of this language completely ignores the context of the court's statement. The district court was merely explaining why it chose not to award attorney fees. Although the court found her argument tenuous, it felt that the argument was credible enough for Malmin to avoid an award of attorney fees to Engler.

Finally, and most importantly, as a matter of public policy, we cannot subvert the reasoning behind this rule by adopting so narrow a view of judicial proceedings. Section 586 cmt. *a* of the RESTATEMENT (SECOND) OF TORTS concisely states the reasoning behind the rule here: "The privilege stated in this Section is based upon a public policy of securing to attorneys and officers of the court the utmost freedom in their efforts to secure justice for their clients." To say that once a default is taken or a judgment is entered, the matter is concluded for purposes of immunity of communications would produce the exact opposite result from that envisioned by the

rule. Judgments procured by fraud or other misconduct, as Engler claims here, could then be used by those procuring such judgments to hide their own wrongdoing.

We therefore conclude that under the facts of this case, the letter written by Engler to the trial court were communications made in the course of a judicial proceeding. The absolute immunity from defamation liability accorded to attorneys for communications made during the course of a judicial proceeding applied to Engler's letter.[1]

▮ Malmin's argument that Engler was not licensed to practice law in Idaho, and therefore could not be a participant in a judicial proceeding in this state, is misdirected. The rule of immunity, as stated in § 586 of the Restatement includes statements made *preliminary to a proposed* judicial proceeding. The purpose of the negotiations between Engler and Malmin was to avoid the necessity of the father traveling to Idaho to take part in the proceeding. There was no licensing requirement for Engler to engage in these negotiations. The fact that he had not secured permission to make a court appearance in Idaho or formally associated with Idaho counsel is irrelevant.

Malmin also raises a number of other issues relating to the proper procedure for summary judgments, none of which we find to have merit. As noted, in this case Malmin also moved for summary judgment on the issue of whether the statements contained in the letters were privileged. The trial court then properly reviewed the facts in this matter, the material of which were undisputed, and found Engler entitled to judgment as a matter of law.

▮ Malmin also raises the questions of whether the statements made to the judge in Engler's letters were true and whether the parties had come to a "meeting of the minds" regarding the terms of the stipulation in the underlying divorce action. Because the only issue ruled on by the district

1. Our conclusion that the letter was cloaked in immunity should not be viewed as condoning the fact that Engler engaged in *ex parte* communications with the magistrate, apparently neither sending Malmin a copy of the letter nor informing her of it.

court was the defense of absolute privilege, these questions are wholly irrelevant. If an absolute privilege is established, the speaker's belief in the statement's truth or falsity, or their actual truth or falsity, simply does not matter. *See* RESTATEMENT (SECOND) OF TORTS § 586 cmt. *a* (1977); W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 114 (5th ed. 1984).

Because the only question before the district court was whether the communications were made in the course of a judicial proceeding, which was a question of law, the summary judgment was properly granted.

## II.

On this appeal, the respondents seek attorney fees based on their claim that the appellant has raised no argument of substance whatsoever and that this appeal was brought frivolously, unreasonably and without foundation. We agree.

 Idaho Code § 12–121 and I.A.R. 41 allow for reasonable attorney fees on appeal. An award of attorney fees on appeal is appropriate when the appeal is brought or defended frivolously, unreasonably or without foundation. *Matter of Estate of Irwin*, 104 Idaho 876, 880, 664 P.2d 783, 787 (Ct.App.1983). The only serious question presented in this case was whether the term "judicial proceeding" encompasses letters written two weeks after the taking of a default judgment in which the attorney informed the trial court of a possible fraud and requested that the court inquire into the matter. In light of the case law and the clearly enunciated policy behind the rule granting immunity for such communications, we find that the appeal in this case was unreasonable and without adequate legal foundation. The district court indicated that it would "restrain" itself by not imposing fees. We are not so inclined. We therefore grant attorney fees to the respondents on this appeal.

The judgment for the respondents is affirmed. Costs and fees are awarded to the respondents, in amounts to be determined under I.A.R. 40 and 41.

WALTERS, C.J., and LANSING, J., concur.